IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MATTHEW CROWE, JONATHAN THOMAS, JESSE KIRK, and GONZALO WERNER PINTOS,<br><br>           Plaintiffs,<br><br>     vs.<br><br>AMD WELDING SERVICES, LLC, DEREK ABBOTT, and AMBER ABBOTT,<br><br>           Defendants | CIVIL ACTION FILE NO.<br> 2:22-CV-057-RWS |

## COMPLAINT

Plaintiffs Matthew Crowe ("Crowe"), Jonathan Thomas ("Thomas"), Jesse Kirk ("Kirk"), and Gonzalo Werner Pintos ("Pintos") (collectively "Plaintiffs") bring this Complaint against Defendant AMD Welding Services, LLC ("AMD"), Derek Abbott ("D. Abbott"), and Amber Abbott ("A. Abbott") (collectively "Defendants") and show the Court as follows:

1.    INTRODUCTION

1.

This is a wage and hour case.

1

2.

AMD operates a business in Winder Georgia 30680 that provides welding services to other businesses and entities. Defendants employed Plaintiffs in this enterprise as welders. Defendants initially misclassified Plaintiffs Crowe, Kirk and Pintos as independent contractors as opposed to employees. Defendants later reclassified Plaintiffs Crowe, Kirk and Pintos as employees. Plaintiffs regularly worked more than 40 hours per week. Defendants failed to compensate Plaintiffs at one-and-one-half times their regular hourly rates for all time worked in excess of forty (40) hours during each work week.

**(a)    Jurisdiction and Venue**

3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein arose in this judicial district and because AMD is located in this district.

**(b)    The Parties**

   **i.  Matthew Crowe**

5.

Crowe is a natural person who resides in Barrow County, Georgia.

6.

AMD employed Crowe as a welder from approximately August 21, 2017 through December 17, 2021.

7.

From August 21, 2017 through December 17, 2021, Crowe was an "employee" of AMD within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

   **ii.   Jonathan Thomas**

8.

Thomas is a natural person who resides in Rockdale County, Georgia.

9.

AMD initially employed Thomas as a welder from 2013 until 2018.

10.

AMD later employed Thomas as a lead welder from approximately February 14, 2019 through September 24, 2021.

11.

During all times relevant from February 14, 2019 through September 24, 2021, Thomas was an "employee" of AMD within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

### iii.  Jesse Kirk

12.

Kirk is a natural person who resides in DeKalb County, Georgia.

13.

AMD employed Kirk as a welder from approximately March 10, 2020 through August 15, 2021.

14.

From March 10, 2020 through August 15, 2021, Kirk was an "employee" of AMD within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

### iv.   Gonzalo Werner Pintos

15.

Pintos is a natural person who resides in Barrow County, Georgia.

16.

AMD employed Pintos as a welder from approximately June 2016 through July 6, 2021.

17.

From June 2016 through July 6, 2021, Pintos was an "employee" of AMD within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

**vii.    AMD**

18.

AMD is a Domestic Limited Liability Company organized under the laws of the State of Georgia.

19.

AMD is subject to the personal jurisdiction of this Court.

20.

AMD may be served with process via service on its registered agent, Amber Abbott at 775 W. Winder Industrial Parkway, Winder, Georgia 30680 or wherever she may be located.

**viii.    Derek Abbott**

21.

D. Abbott is a natural person who resides in Jackson County, Georgia.

22.

D. Abbott is subject to the personal jurisdiction of this Court.

23.

D. Abbott may be served with process at 440 Fountainhead Drive, Jefferson, Georgia 30549 or wherever he may be located.

ix.   **A. Abbott**

24.

A. Abbott is a natural person who resides in Jackson County, Georgia.

25.

A. Abbott is subject to the personal jurisdiction of this Court.

26.

A. Abbott may be served with process at 440 Fountainhead Drive, Jefferson, Georgia 30549 or wherever she may be located.

**II. Factual Allegations**

    **(a) Enterprise Coverage**

27.

During the period from March 2019 through December 17, 2021 (hereinafter the "Relevant Time Period"), Plaintiffs and other employees of AMD handled goods which moved in interstate commerce in the furtherance of the commercial purpose

of AMD including, but not limited to, furniture, phones, computers, trucks, welding machinery and welding supplies.

28.

During 2019, AMD had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2020, AMD had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During 2021, AMD had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

31.

At all times material hereto, AMD has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

32.

During 2019, AMD had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A)

33.

During 2020, AMD had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A)

34.

During 2021, AMD had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

During 2019, AMD had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2020, AMD had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During 2021, AMD had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

At all times material hereto, AMD has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**(b)    Individual Liability**

**i.  Derek Abbott**

39.

At all times material hereto, D. Abbott has been an owner and manager of AMD.

40.

At all times material hereto, D. Abbott exercised operational control over Plaintiffs' work activities.

41.

At all times material hereto, D. Abbott managed the day-to-day operation of the AMD in which Plaintiffs worked.

42.

At all times material hereto, AMD vested D. Abbott with supervisory authority over Plaintiffs.

43.

At all times material hereto, D. Abbott exercised supervisory authority over Plaintiffs.

44.

At all times material hereto, D. Abbott scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

45.

At all times material hereto, D. Abbott exercised authority and/or supervision over Plaintiffs' compensation.

46.

At all times material hereto, D. Abbott had authority to hire employees on behalf of AMD.

47.

At all times material hereto, D. Abbott had authority to terminate employees of AMD.

48.

At all times material hereto, D. Abbott had authority to discipline employees of AMD.

49.

At all times material hereto, D. Abbott acted directly or indirectly in the interest of AMD in relation to Plaintiffs.

50.

At all times material hereto, D. Abbott was an "employer" of Plaintiffs within the within the meaning of the FLSA § 3(d), 29 U.S.C. § 203(d).

### ii. Amber Abbott

51.

At all times material hereto, AMD employed A. Abbott as an owner and/or manager.

52.

At all times material hereto, A. Abbott exercised operational control over Plaintiffs' work activities.

53.

At all times material hereto, A. Abbott managed the day-to-day operation of the AMD facility in which Plaintiffs worked.

54.

At all times material hereto, AMD vested A. Abbott with supervisory authority over Plaintiffs.

55.

At all times material hereto, A. Abbott exercised supervisory authority over Plaintiffs.

56.

At all times material hereto, A. Abbott scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

57.

At all times material hereto, A. Abbott exercised authority and supervision over Plaintiffs' compensation.

58.

At all times material hereto, A. Abbott had authority to hire employees for AMD.

59.

At all times material hereto, A. Abbott had authority to terminate employees of AMD.

60.

At all times material hereto, A. Abbott had authority to discipline employees of AMD.

61.

At all times material hereto, A. Abbott acted directly or indirectly in the interest of AMD in relation to Plaintiffs.

62.

At all times material hereto, A. Abbott was an "employer" of Plaintiffs within the within the meaning of the FLSA § 3(d), 29 U.S.C. § 203(d).

**(c)    FLSA §213 Exemptions**

63.

At all times material hereto, Plaintiffs were not exempt from the Maximum Hours requirements of the FLSA by reason of any statutory exemption.

64.

At all times material hereto, AMD compensated Plaintiffs at an hourly rate.

65.

AMD never compensated Plaintiffs on basis of a salary.

66.

At all times material hereto, AMD did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

67.

At all times material hereto, AMD did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

68.

At all times material hereto, AMD did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

69.

At all times material hereto, no Plaintiff supervised two or more employees.

70.

At all times material hereto, AMD did not employ Plaintiffs in the capacity of an "outside salesman" within the meaning of 29 USC § 213 (a)(1).

**(d)      Misclassification as Independent Contractors**

71.

Upon hire, Defendants classified Plaintiffs Crowe, Kirk, and Pintos as independent contractors.

72.

AMD failed to rely on advice of legal counsel when it classified Plaintiffs Crowe, Kirk, and Pintos as independent contractors.

73.

AMD failed to rely on any ruling, regulation or advisory opinion when it classified Plaintiffs Crowe, Kirk, and Pintos as independent contractors.

74.

During the Relevant Time Period, Defendants annually created and issued to Plaintiffs Crowe, Kirk, and Pintos and the Internal Revenue Service an IRS Form 1099-MISC reflecting the amount AMD paid to Plaintiffs Crowe, Kirk, and Pintos in the previous calendar year.

75.

Throughout the Relevant Time Period, AMD exercised control over the time that Plaintiffs worked.

76.

Throughout the Relevant Time Period, AMD exercised control over the manner in which Plaintiffs worked.

77.

Throughout the Relevant Time Period, Plaintiffs did not solicit customers on their own behalf.

78.

Throughout the Relevant Time Period, all of Plaintiffs efforts were directed at serving the customers and agents of AMD.

79.

Throughout the Relevant Time Period, Defendants provided Plaintiffs with all materials and equipment necessary for them to perform their job duties as welders on behalf of Defendants including, but not limited to, welding machinery, welding supplies and trucks.

80.

Throughout the Relevant Time Period, Defendants required Plaintiffs to wear articles of clothing including, but not limited to shirts, hats and/or hoodies with the AMD logo while performing work on behalf of Defendants.

81.

Throughout the Relevant Time Period, while performing duties on behalf of Defendants, Plaintiffs drove trucks with the AMD logo on them.

82.

Throughout the Relevant Time Period, Plaintiffs did not advertise on their own behalf in connection with the type of services they performed for AMD.

83.

Throughout the Relevant Time Period, Plaintiffs did not make any significant investments into his work such that he shared any significant risk of loss.

84.

Throughout the Relevant Time Period, AMD bore all costs associated with advertising, marketing, and promoting the business of AMD.

85.

Throughout the Relevant Time Period, Plaintiffs were economically dependent on AMD for their livelihood.

86.

Throughout the Relevant Time Period, Plaintiffs did not exercise independent business judgment in connection with their work for AMD.

87.

Throughout the Relevant Time Period, AMD did not permit Plaintiffs to subcontract out their work or hire employees to perform their job duties.

88.

Throughout the Relevant Time Period, AMD negotiated contracts or payment arrangement for the clients that Plaintiffs served without input or direction from Plaintiffs.

89.

Throughout the Relevant Time Period Plaintiffs' opportunity for profit or loss did not depend on Plaintiffs' managerial skill.

90.

Throughout the Relevant Time Period, Plaintiffs worked for Defendants on a consistent and full-time basis.

91.

Throughout the Relevant Time Period, AMD's sole business was providing welding services to its clients.

92.

Throughout the Relevant Time Period, the work performed by Plaintiffs was an integral part of AMD's business.

93.

During the Relevant Time Period, Defendants misclassified Plaintiffs Crowe, and Kirk as independent contractors.

94.

Throughout the Relevant Time Period, Plaintiffs were "employees" of AMD within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

95.

Throughout the Relevant Time Period, AMD was an "employer" of Plaintiffs within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

**(e)**       **Additional Factual Allegations**

      **i.   All Plaintiffs**

96.

Throughout the Relevant Time Period, AMD scheduled its employees, including the Plaintiffs on the basis of a seven-day week, extending from the beginning of each Sunday to the end of each Saturday.

97.

29 U.S.C. § 207 requires that Defendants compensate Plaintiffs at a rate of one-and-one-half times their regular hourly rates for all time worked in excess of forty (40) hours in a work week.

98.

Defendants knew or should have known that the 29 U.S.C. § 207 requires that they pay Plaintiffs a premium for all hours worked above forty hours in any given workweek.

99.

Throughout the Relevant Time Period, when Defendants classified Plaintiffs Crowe and Kirk as independent contractors, Defendants compensated Plaintiffs at their regular hourly rate of pay (*i.e.,* straight pay) for all hours worked, including all time worked in excess of 40 hours in a work week.

100.

Throughout the Relevant Time Period, when Defendants classified Plaintiffs as employees, Defendants compensated Plaintiffs for hours they worked up to 40 hours in a work week via a paycheck.

101.

Throughout the Relevant Time Period, when Defendants classified Plaintiffs employees, Defendants compensated Plaintiffs in cash.

102.

Throughout the Relevant Time Period, when Defendants classified Plaintiffs employees, Defendants compensated Plaintiffs at a rate of one-and-one-quarter times their regular hourly rates for time worked in excess of 40 hours in a work week.

103.

Throughout the Relevant Time Period, Defendants failed to compensate Plaintiffs at one-and-one-half times their regular hourly rates for time worked in excess of forty (40) hours in all workweeks.

104.

Throughout the Relevant Time Period, Defendants willfully failed to compensate Plaintiffs at one-and-one-half times their regular hourly rates for time worked in excess of forty (40) hours in all workweeks.

### ii.    Matthew Crowe

105.

AMD employed Crowe as a welder from approximately August 21, 2017 through December 17, 2021.

106.

During the Relevant Time Period, Crowe performed services as a welder for Defendants.

107.

During the Relevant Time Period, Defendants classified Crowe as an independent contractor.

108.

During the Relevant Time Period, Defendants compensated Crowe at his regular hourly rate for all hours he worked, including overtime hours.

109.

During the Relevant Time Period, Defendants failed to pay Crowe an overtime premium for all hours he worked in excess of 40 hours during each work week.

110.

During the Relevant Time Period, Defendants compensated Crowe at a regular rate of $15.00 per hour.

111.

From approximately July 2020 through June 2021, Defendants compensated Crowe at a regular rate of $16.00 per hour.

112.

From approximately July 2021 through December 17, 2021, Defendants compensated Crowe at a regular rate of $17.00 per hour.

113.

In or about July 2021, Defendants reclassified Crowe as a W2 employee.

114.

During all times relevant from July 2021 through December 17, 2021, Defendants classified Crowe as an employee.

115.

Crowe's duties did not change after Defendants reclassified his employment from independent contractor to employee.

116.

From July 2021 through December 17, 2021, Defendants compensated Crowe via a paycheck for all hours he worked up to 40 hours during each work week.

117.

From July 2021 through December 17, 2021, Defendants compensated Crowe in cash for overtime hours he worked.

118.

From July 2021 through December 17, 2021, Defendants weekly tendered to Crowe an envelope containing cash as compensation for hours he worked in excess of 40 hours during each work week.

119.

During all times relevant from July 2021 through December 17, 2021, Defendants paid Crowe at a rate of one-and-one-quarter times his regular hourly rate for the hours he worked in excess of 40 hours during each work week.

120.

During the Relevant Time Period, Crowe normally worked 5 days per week, Monday through Friday, during most work weeks.

121.

During the Relevant Time Period, Crowe often worked on Saturdays.

122.

During the Relevant Time Period, Crowe normally worked 45 to 60 hours during most work weeks.

123.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Crowe worked.

124.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA's Maximum Hours requirement applied to Crowe.

125.

29 U.S.C. § 207 requires that Defendants compensate Crowe at a rate of one-and-one-half times his regular rate for all time worked in excess of forty (40) hours in a work week.

126.

Defendants knew or should have known that the 29 U.S.C. § 207 requires that they pay Crowe at a rate of one-and-one-half times his regular rate for all time worked in excess of forty hours in each workweek.

127.

Throughout the Relevant Time Period, Crowe regularly worked more than forty (40) hours during most workweeks.

128.

Throughout the Relevant Time Period, Defendants failed to pay Crowe at one-and-one-half times his regular hourly rate for time he worked in excess of forty (40) hours in all workweeks.

129.

Throughout the Relevant Time Period, Defendants willfully failed to pay Crowe at one-and-one-half times his regular hourly rate for time worked in excess of forty (40) hours in all workweeks.

**iii.   Jonathan Thomas**

130.

AMD initially employed Thomas as a welder from approximately 2013 until 2018.

131.

AMD later employed Thomas as a lead welder from approximately February 14, 2019 through September 24, 2021.

132.

During the Relevant Time Period, Thomas performed services as a welder for Defendants.

133.

From approximately March 2019 through June 2020, Defendants compensated Thomas at a regular rate of $23.00 per hour.

134.

From approximately July 2020 through June 2021, Defendants compensated Thomas at a regular rate of $24.00 per hour.

135.

From approximately July 2021 through September 24, 2021, Defendants compensated Thomas at a regular rate of $25.50 per hour.

136.

From March 2019 through September 24, 2021, Defendants compensated Thomas via a paycheck for all hours he worked up to 40 hours during each work week.

137.

From March 2019 through September 24, 2021, Defendants compensated Thomas in cash for the overtime hours he worked.

138.

During all times relevant from March 2019 through September 24, 2021, Defendants tendered Thomas an envelope containing cash for the hours he worked in excess of 40 hours during each work week.

139.

During all times relevant from March 2019 through September 24, 2021, Defendants paid Thomas at a rate of one-and-one-quarter times his regular hourly rate for the hours he worked in excess of 40 hours during each work week.

140.

Throughout the Relevant Time Period, Thomas normally worked 6 days per week, during most work weeks.

141.

Throughout the Relevant Time Period, Thomas often worked on weekends.

142.

Throughout the Relevant Time Period, Thomas normally worked 70 to 80 hours during most work weeks.

143.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Thomas worked.

144.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA's Maximum Hours requirement applied to Thomas.

145.

29 U.S.C. § 207 requires that Defendants compensate Thomas at a rate of one-and-one-half times his regular rate for all time worked in excess of forty (40) hours in a work week.

146.

Defendants knew or should have known that the 29 U.S.C. § 207 requires that they pay Thomas at a rate of one-and-one-half times his regular rate for all hours worked above forty hours in any given workweek.

147.

Throughout the Relevant Time Period, Thomas regularly worked more than forty (40) hours during most workweeks.

148.

Throughout the Relevant Time Period, Defendants failed to pay Thomas at one-and-one-half times his regular hourly rate for time he worked in excess of forty (40) hours in all workweeks.

149.

Throughout the Relevant Time Period, Defendants willfully failed to pay Thomas at one-and-one-half times his regular hourly rate for time worked in excess of forty (40) hours in all workweeks.

**iv.   Jesse Kirk**

150.

AMD employed Kirk as a welder from approximately March 10, 2020 through August 15, 2021.

151.

Throughout the Relevant Time Period, Kirk performed services as a welder for Defendants.

152.

During approximately the first two (2) months of his employment, Defendants classified Kirk as an independent contractor.

153.

From approximately March 10, 2020 through July 30, 2020, Defendants compensated Kirk at his regular hourly rate (*i.e.,* straight pay) for all time worked, including time worked in excess of 40 hours in a work week.

154.

From March 10, 2020 through approximately July 30, 2020, Defendants failed to pay Kirk an at a rate of one-and-one-half times his regular rate for all hours he worked in excess of 40 hours during each work week.

155.

Throughout the Relevant Time Period, Defendants compensated Kirk at a regular rate of $21.00 per hour.

156.

On or about July 31, 2020, Defendants reclassified Kirk as a W2 employee.

157.

From July 31, 2020 through August 15, 2021, Defendants classified Kirk as an employee.

158.

Kirk's duties did not change after Defendants reclassified him from independent contractor to employee.

159.

From July 31, 2020 through August 15, 2021, Defendants compensated Kirk via a paycheck for all hours he worked up to 40 hours during each work week.

160.

From July 31, 2020 through August 15, 2021, Defendants compensated Kirk in cash for overtime hours all time worked in excess of 40 hours in a work week.

161.

From July 31, 2020 through August 15, 2021, Defendants tendered Kirk an envelope containing cash as compensation for the hours he worked in excess of 40 hours during each work week.

162.

From July 31, 2020 through August 15, 2021, Defendants paid Kirk at a rate of one-and-one-quarter times his regular hourly rate for all time worked in excess of 40 hours during each work week.

163.

Throughout the Relevant Time Period, Kirk normally worked 6 days per week, during most work weeks.

164.

Throughout the Relevant Time Period, Kirk often worked on weekends.

165.

Throughout the Relevant Time Period, Kirk normally worked an average of 60 hours during most work weeks.

166.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Kirk worked.

167.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA's Maximum Hours requirement applied to Kirk.

168.

29 U.S.C. § 207 requires that Defendants compensate Kirk at a rate of one-and-one-half times his regular rate for all time worked in excess of forty (40) hours in a work week.

169.

Defendants knew or should have known that the 29 U.S.C. § 207 requires that they pay Kirk at a rate of one-and-one-half times his regular rate for all hours worked above forty hours in any given workweek.

170.

Throughout the Relevant Time Period, Kirk regularly worked more than forty (40) hours during most workweeks.

171.

Throughout the Relevant Time Period, Defendants failed to pay Kirk at one-and-one-half times his regular hourly rate for time he worked in excess of forty (40) hours in all workweeks.

172.

Throughout the Relevant Time Period, Defendants willfully failed to pay Kirk at one-and-one-half times his regular hourly rate for time worked in excess of forty (40) hours in all workweeks.

**v.   Gonzalo Werner Pintos**

173.

AMD employed Pintos as a welder from approximately June 2016 through July 6, 2021.

174.

Throughout the Relevant Time Period, Pintos performed services as a welder for Defendants.

175.

During all times relevant from approximately March 2019 through April 2021, Defendants compensated Pintos at a regular rate of $22.00 per hour.

176.

During all times relevant from May 2021 through July 6, 2021, Defendants compensated Pintos at a regular rate of $23.00 per hour.

177.

During all times relevant from March 2019 through July 6, 2021, Defendants classified Pintos as an employee.

178.

From March 2019 through July 6, 2021, Defendants compensated Pintos via a paycheck for all hours he worked up to 40 hours during each work week.

179.

From March 2019 through July 6, 2021, Defendants compensated Pintos in cash for all time worked in excess of 40 hours in each work week.

180.

From March 2019 through July 6, 2021, Defendants tendered Pintos an envelope containing cash as compensation for all time worked in excess of 40 hours during each work week.

181.

From March 2019 through July 6, 2021, Defendants paid Pintos at a rate of one-and-one-quarter times his regular hourly rate for all time worked in excess of 40 hours during each work week.

182.

Throughout he Relevant Time Period, Pintos normally worked 5-6 days per week, during most work weeks.

183.

Throughout the Relevant Time Period, Pintos often worked on Saturdays.

184.

Throughout the Relevant Time Period, Pintos normally worked 60-80 hours during most work weeks.

185.

Throughout the Relevant Time Period, Defendants were aware of the actual number of hours Pintos worked.

186.

Throughout the Relevant Time Period, Defendants knew or should have known that the FLSA's Maximum Hours requirement applied to Pintos.

187.

29 U.S.C. § 207 requires that Defendants compensate Pintos at a rate of one-and-one-half times his regular rate for all time worked in excess of forty (40) hours in a work week.

188.

Defendants knew or should have known that the 29 U.S.C. § 207 requires that they pay Pintos a premium for all hours worked above forty hours in any given workweek.

189.

Throughout the Relevant Time Period, Pintos regularly worked more than forty (40) hours during most workweeks.

190.

Throughout the Relevant Time Period, Defendants failed to pay Pintos at one-and-one-half times his regular hourly rate for time he worked in excess of forty (40) hours in all workweeks.

191.

Throughout the Relevant Time Period, Defendants willfully failed to pay Pintos at one-and-one-half times his regular hourly rate for time worked in excess of forty (40) hours in all workweeks.

## III.   CLAIMS FOR RELIEF

### COUNT I - FAILURE TO PAY OVERTIME

192.

The allegations in paragraphs 1-191 above are incorporated herein by reference as if stated verbatim.

193.

Throughout the Relevant Time Period, Plaintiffs were employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

194.

Throughout the Relevant Time Period, Plaintiffs regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

195.

Throughout during the Relevant Time Period, Defendants failed to pay Plaintiffs at one-and-one-half times their regular rate for time worked in excess of forty (40) hours during each work week.

196.

Throughout the Relevant Time Period, Defendants willfully failed to pay Plaintiffs at one–and–one–half times their regular rate for work in excess of forty (40) hours in any work week.

197.

Plaintiffs are entitled to payment of due but unpaid overtime from Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

198.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to a like amount in liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

199.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorneys' fees, damages from Defendants, jointly and severally, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**WHEREFORE**, the Plaintiffs pray that this Court:

(a)     Take jurisdiction of this matter;

(b)     Award Plaintiffs payment for due but unpaid overtime compensation, calculated at one and one-half times their regular hourly rates;

(c)     Award Plaintiffs a like amount in liquidated damages from Defendants, jointly and severally;

(d)     Award each Plaintiff prejudgment interest on all amounts owed;

(e)     Award each Plaintiff nominal damages;

(f)     Award each Plaintiff their reasonable attorney's fees and expenses of litigation pursuant to § 29 U.S.C. 216(b); and

(g)     Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted,


                                                    **Delong Caldwell Bridgers
                                                    Fitzpatrick & Benjamin, LLC**

101 Marietta Street
Suite 2650                                          */s/ Kevin D. Fitzpatrick, Jr.*
Atlanta, Georgia 30303                              Kevin D. Fitzpatrick, Jr.
(404) 979-3150                                      Ga. Bar No. 262375
(404) 979-3170 (f)
kevin.fitzpatrick@dcbflegal.com                     */s/ Charles R. Bridgers*
charlesbridgers@dcbflegal.com                       Charles R. Bridgers
                                                    Ga. Bar No. 080791

                                                    Counsel for Plaintiffs